**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 399 HEALTH & WELFARE TRUST, and INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 399 EDUCATIONAL TRAINING FUND, | ) ) ) ) ) ) |
| | CASE NO.: 26-cv-6523 |
| Plaintiffs, | ) ) ) JUDGE: ) ) ) MAGISTRATE JUDGE: |
| vs. | ) ) |
| BOOK AND LADDER LLC, a California limited liability company, | ) ) ) |
| Defendant. | ) ) |

**COMPLAINT**

NOW COME Plaintiffs, the INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 399 HEALTH & WELFARE TRUST ("Welfare Fund"), and the INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 399 EDUCATIONAL TRAINING FUND ("ETF") (collectively "Trust Funds"), by and through their attorneys, JOHNSON & KROL, LLC, and complain of the Defendant, BOOK AND LADDER LLC ("B&L"), as follows:

**JURISDICTION AND VENUE**

1. This action arises under Sections 502 and 515 of the Employee Retirement Income Security Act of 1974 (hereinafter referred to as "ERISA") (29 U.S.C. §§ 1132 and 1145). The Court has jurisdiction over the subject matter pursuant to 29 U.S.C. §§ 1132 and 1145, as well as 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 29 U.S.C. §1132(e)(2) in that the Trust Funds are administered at 2260 S. Grove Street, Chicago, Illinois, and pursuant to 28 U.S.C. §

Page 1 of 7

1391(b)(2) in that a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in the Northern District of Illinois, Eastern Division.

## PARTIES

3. The Trust Funds receive contributions from numerous employers pursuant to collective bargaining agreements negotiated between the International Union of Operating Engineers of Chicago, Illinois and Vicinity Local No. 399 ("Union") and employers, and are therefore multiemployer plans under 29 U.S.C. § 1002.

4. The Union is the bargaining representative of Defendant B&L's bargaining-unit employees.

5. Defendant B&L is a California limited liability company.

6. Upon information and belief, Defendant B&L operated as the management company for the building located at 59 East Van Buren Street, Chicago, Illinois 60605 ("Van Buren Building") from 2021 to August 31, 2025.

## FACTS COMMON TO ALL COUNTS

7. Effective June 1, 2021, B&L signed a Collective Bargaining Agreement ("CBA") with the Union which covered bargaining-unit work performed at the Van Buren Building through May 31, 2025. (A copy of the CBA is attached as **Exhibit 1**).

8. Pursuant to the CBA, B&L became bound by the terms of the Agreements and Declarations of Trust ("Trust Agreements") that created the Trust Funds.

9. Pursuant to their respective Trust Agreements, the Welfare Fund and Training Fund adopted the Restated Collection and Audit Policy ("Collection Policy") to administer the collection of contributions from contributing employers. (A copy of the Collection Policy is attached as **Exhibit 2**).

10. Upon information and belief, B&L continued to deduct and remit union dues from the paychecks of its bargaining unit members between June 1, 2025, and August 31, 2025.

11. Upon information and belief, B&L continued to maintain the wage scales and benefits structure mandated by the CBA between June 1, 2025, and August 31, 2025.

12. Upon information and belief, B&L continued to honor all other conditions of employment set forth in the CBA for its bargaining unit members between June 1, 2025, and August 31, 2025.

13. By continuing to honor the terms of the agreement and conditions of employment set forth in the CBA between June 1, 2025, and August 31, 2025, B&L manifested an objective intent to remain bound by the substantive terms, conditions, and contribution obligations set forth in the CBA.

## COUNT I
## BREACH OF THE COLLECTIVE BARGAINING AGREEMENT – WELFARE FUND

14. Plaintiffs re-allege and incorporate the allegations contained in Paragraphs 1-13 of this Complaint with the same force and effect as if fully set forth herein.

15. The CBA remained in full force and effect from June 1, 2021, through May 31, 2025. (**Exhibit 1**).

16. Section 17 of the CBA explicitly provides that the B&L's obligation to contribute to the Welfare Fund continues during periods when a new CBA is being negotiated. (**Exhibit 1**).

17. The Union attempted to negotiate a new contract with B&L following expiration of the CBA.

18. No successor agreement was executed, and no lawful bargaining impasse occurred prior to August 31, 2025.

19. Despite expiration of the CBA, the contractual obligations to contribute to the Welfare Fund remained in full force and effect between June 1, 2025, and August 31, 2025.

20. Pursuant to the provisions of the CBA, the Trust Agreement, and the Collection Policy, B&L is required pay monthly contributions to the Welfare Fund for all bargaining-unit employees.

21. Welfare Fund contributions are billed in the third week of the month preceding the month being billed, and payment is due the first day of the month following the month being billed.

22. Pursuant to Section 502(g)(2) of ERISA (29 U.S.C. § 1132), provisions of the CBA, the Welfare Fund's Trust Agreement, and the Collection Policy, employers who fail to submit their monthly contributions to the Welfare Fund within ninety (90) days of the due date, are responsible for the payment of liquidated damages equal to 10% of the amount unpaid, plus reasonable attorney's fees, and costs associated with collecting delinquent contributions and liquidated damages.

23. B&L failed to submit contributions to the Welfare Fund for the months of March 2025 through August 2025, in the aggregate amount of $38,267.88.

24. As a result of B&L's failure to submit contributions to the Welfare Fund for March 2025 through August 2025 within ninety (90) days of the due date, B&L owes the Welfare Fund liquidated damages totaling $3,826.51.

25. The Welfare Fund has been required to employ the undersigned attorneys to collect the monies that are due and owing from B&L.

26. B&L is obligated to pay the reasonable attorney's fees and court costs incurred by the Welfare Fund pursuant to the CBA, Trust Agreements, Collection Policy, and 29 U.S.C. §

1132(g)(2)(D).

**WHEREFORE**, Plaintiffs respectfully request:

A.  That Judgment be entered in favor of the Welfare Fund and against B&L in the aggregate amount of $42,094.39 for its breach of the CBA for the months of March 2025 through August 2025, itemized as follows:

    i.  $38,267.88 in unpaid contributions; and

    ii.  $3,826.51 in liquidated damages;

B.  That this Honorable Court enter Judgment in favor of the Welfare Fund and against B&L for any amounts discovered to be owed in addition to those set forth in Paragraph A;

C.  That B&L be ordered to pay the reasonable attorney's fees and costs incurred by the Welfare Fund pursuant to the CBA, Trust Agreements, Collection Policy, and 29 U.S.C. § 1132(g)(2)(D); and

D.  That the Welfare Fund have such other and further relief as the Court may deem just and equitable all at B&L's cost pursuant to 29 U.S.C. § 1132(g)(2)(E).

## COUNT II
## BREACH OF THE COLLECTIVE BARGAINING AGREEMENT – ETF

27.  Plaintiffs re-allege and incorporate the allegations contained in Paragraphs 1-26 of this Complaint with the same force and effect as if fully set forth herein.

28.  Pursuant to the provisions of the CBA, the ETF's Trust Agreement, and the Collection Policy, B&L was required to pay 2025-2026 annual contributions to the ETF for all active, full-time, bargaining-unit employees as of June 1, 2025.

29.  The 2025-2026 ETF contributions were billed on April 25, 2026.

30.  Pursuant to Section 502(g)(2) of ERISA (29 U.S.C. § 1132), provisions of the CBA, the

ETF's Trust Agreement, and the Collection Policy, employers who fail to submit their annual contributions to the ETF within ninety (90) days of the due date, are responsible for the payment of liquidated damages equal to 10% of the amount unpaid, plus reasonable attorney's fees, and costs associated with collecting delinquent contributions and liquidated damages.

31. ETF failed to submit annual contributions for the 2025-2026 period totaling $5,312.00 to the ETF for its active, full-time employees as of June 1, 2025.

32. As a result of B&L's failure to submit annual contributions for the 2025-2026 period to the ETF within ninety (90) days of the due date, B&L owes the ETF liquidated damages totaling $531.20.

33. Plaintiffs have been required to employ the undersigned attorneys to collect the monies that are due and owing from B&L.

34. B&L is obligated to pay the reasonable attorney's fees and court costs incurred by the Plaintiffs pursuant to the CBA, Trust Agreements, Collection Policy, and 29 U.S.C. § 1132(g)(2)(D).

**WHEREFORE**, Plaintiffs respectfully request:

A. That Judgment be entered in favor of the ETF and against B&L in the aggregate amount of $5,843.20 for its breach of the CBA for all active, full-time, bargaining-unit employees, itemized as follows:

    i. $5,312.00 in unpaid annual contributions; and

    ii. $531.20 in liquidated damages;

B. That this Honorable Court enter Judgment in favor of Plaintiffs and against B&L for any amounts discovered to be owed in addition to those set forth in Paragraph A;

C.      That B&L be ordered to pay the reasonable attorney's fees and costs incurred by the ETF

pursuant to the CBA, Trust Agreements, Collection Policy, and 29 U.S.C. § 1132(g)(2)(D);

and

D.      That the ETF have such other and further relief as the Court may deem just and equitable

all at B&L's cost pursuant to 29 U.S.C. § 1132(g)(2)(E).

Respectfully Submitted,

**INTERNATIONAL UNION OF**
**OPERATING ENGINEERS LOCAL 399**
**HEALTH & WELFARE TRUST** *et al.*

/s/ William M. Blumthal, Jr. – 6281041
One of the Plaintiffs' Attorneys
JOHNSON & KROL, LLC
141 W. Jackson Boulevard, Suite 2055
Chicago, Illinois 60604
(312) 757-5477
blumthal@johnsonkrol.com